[Civil No. 2805. Filed October 7, 1929.]

[279 Pac. 253.]

MARY C. WILSON and MERCER D. WILSON, Her Husband, Appellants, v. H. J. COERVER and CAPITAL INVESTMENT COMPANY, a Corporation, Appellees.

See Appeal and Error, 4 C. J., sec. 2727, p. 777, n. 65; sec. 2870, p. 900, n. 98; sec. 2890, p. 918, n. 42; sec. 3025, p. 1040, n. 28. Trusts, 39 Cyc., p. 75, n. 10, p. 632, n. 18.

Mr. John W. Ray, for Appellants.

Mr. Luther P. Spalding and Mr. Floyd M. Stahl, for Appellees.

LOCKWOOD, C. J.—This is an action by Mercer D. Wilson and Mary C. Wilson, his wife, hereinafter called the appellants, against Henry J. Coerver and Capital Investment Company, a corporation, hereinafter called appellees, for an accounting and settlement under the terms of an alleged trust agreement wherein appellee Coerver was the trustee and appellants were among the beneficiaries. The case was tried to a jury, which answered the only interrogatory submitted to it in favor of appellants, but the court expressly declined to follow such answer, found the contested question covered thereby in favor of appellees, and rendered judgment in favor of the latter, and from said judgment and the order overruling the motion for a new trial this appeal has been taken.

As in most cases, the first and most important duty of this court is to state the facts, for when they are settled it generally follows that the questions of law for us to consider are much simplified. On the vital issue of fact the jury found one way and the trial court the other. What is our duty in the premises?

It is urged by counsel for appellants that while admittedly this is an equity case, and under the provisions of chapter 125, Session Laws of 1921, the verdict of the jury is advisory only, yet when an appeal is taken to this court and the question is properly raised, the rule so often announced by us that where there is a conflict in the evidence we will not review it to determine whether the verdict of the jury or the

findings, actual or presumptive, of a trial court are correct does not apply, and that in equity cases this court will read the evidence and decide for itself the facts as well as the law; in other words, that we will try the case *de novo* on the reporter's transcript and the documentary evidence found in the record.

Whatever may be the rule in other states, this is not the law of Arizona. In the very similar case of *Donahue* v. *Babbitt*, 26 Ariz. 542, 227 Pac. 995, an equitable action was brought to declare a deed absolute in form to be a mortgage. The issues were submitted to a jury on interrogatories, but the trial court disregarded its answers and rendered judgment on its own findings, as in the present case. In passing on the precise contention made herein the court said:

"Appellant contends that this court should review all the evidence in the case to decide whether the weight of the evidence justified the findings made by the trial judge; in other words, it is urged that a trial *de novo* should be had and that this court should announce its own findings of fact from the whole record. This is not the rule in appeals from equity judgments any more so than in appeals at law. (Citing cases.)"

And we restated the same rule in *Dragoon Marble etc. Co.* v. *McNeish*, 28 Ariz. 96, 235 Pac. 401.

The findings of the trial court are as binding in one class of cases as in the other. In our statement of facts, therefore, we follow the findings of the trial court, actual or assumed, which are necessary to support the judgment.

Prior to February 9th, 1921, Mercer D. Wilson was indebted to the Commonwealth National Bank of Kansas City, Missouri, hereinafter called the Bank, in the sum of $25,000, with some accrued interest, the same being then past due. Jordan, Grace and Phelps Land Company, a corporation, hereinafter called the Land Company, was also indebted to the same bank

in the sum of $40,000 and interest, likewise due and unpaid. Prior to the date mentioned, the capital stock of the Land Company was held by three individuals, Jordan, Grace and Phelps, but about that time, and as incident to the agreement to which we shall next refer, Jordan and Phelps disposed of their entire holdings in the Land Company, and Wilson became the owner of one-half of its capital stock, the other half being owned by Grace.

Wilson and the Land Company were unable to meet their respective obligations and were, in addition, in immediate need of money to protect their equities in certain realty in Arizona and so stated to Coerver, who was acting as the representative of the Bank of Arizona, and proposed that if the latter would postpone the collections of their indebtedness and advance the further sum of $10,000, to be used by the Land Company to protect the equities aforesaid, they would convey to Coerver all their interest in certain Arizona lands, and also in certain other realty in Cape Girardeau, Missouri, to be held as security for the $65,000 and interest owed by Wilson and the Land Company as above, and also for any additional sums advanced by the Bank to the Land Company. The agreement was accepted, reduced to writing, and signed by all parties, and thereafter the Bank advanced large additional sums to the Land Company to meet the charges against some of the lands in question. Pursuant to the agreement, appellants executed and delivered to Coerver their deed to the Cape Girardeau lands, which were their own personal property, and the Land Company transferred to Coerver its rights to the Arizona lands. In July, 1921, the sixty-five thousand dollar indebtedness above referred to and the amount further advanced by the Bank was due and unpaid, and appellants and the Land Company entered into another agreement whereby they confirmed and ratified all the conveyances made by them before to Coer-

ver, and in consideration he agreed to cancel or cause to be canceled all the obligations and notes of appellants and of the Land Company to himself and to the Bank. The court found, contrary to the verdict of the jury, that these debts had been canceled according to the agreement.

On November 2d, 1921, the Land Company brought suit against Coerver, the Bank, and Jordan and Phelps as individuals, asking that it be adjudged to be the equitable owner of all the lands above referred to, and that Coerver be declared to hold them in trust for it. Coerver answered and also filed a cross-complaint, asking that he be declared their absolute and unconditional owner. While this suit was pending and on February 27th, 1922, the Land Company, appellants, and Jordan and Grace, with the wives of the latter two, entered into another agreement with Coerver, reciting that it was for the purpose of effecting a complete settlement of their differences as above. By this agreement appellants, the Land Company and Jordan and Phelps declared that the conveyances above referred to were and had been since July 6th, 1921, unconditional and absolute and free from any claim of appellants, disclaiming any right or interest in the lands covered by such conveyances and stipulating that judgment be entered for Coerver and the Bank. The agreement further provided that a corporation, the Capital Investment Company, one of the appellees herein, should be formed and that Coerver should deed to it certain of the Arizona lands and that it should issue to Coerver its notes in certain amounts and its entire capital stock, and that the stock be by him deposited in escrow, to be delivered to the Land Company or its nominees if they should exercise certain options on the land in question, as set forth in the agreement. All this was done, but none of the options were ever exercised. It

is on this agreement of February 27th that appellants rely as establishing a trust in their favor.

There are some seven assignments of error. They have not been briefed in the form set forth in the rules of this court, and it is somewhat difficult to follow the argument at times, but we will endeavor to cover every point properly raised therein.

The fourth assignment, that the court erred in disregarding the verdict of the jury, and the sixth, that the court erred in not rendering judgment on the verdict for appellants and in accordance therewith are covered in effect by what we have said previously as to the advisory effect of the verdict in an equity case and regarding a trial *de novo*. The third assignment, that the court erred in its instruction, is immaterial. In an equity case, where the verdict is merely advisory, by the overwhelming weight of authority, even where the judge adopts the answers made by the jury, the losing party may not complain of error in the instructions, since the answers when adopted become the decision of the trial court itself on the facts. 4 C. J. 1040. Much more is this necessarily true when the court disregards the answers of the jury, for in that case the erroneous instructions had nothing whatever to do with the facts as actually found and on which the judgment depends. *Watson* v. *Borah*, 37 Okl. 357, 132 Pac. 347; *Haggin* v. *Saile*, 23 Mont. 375, 59 Pac. 154.

And since the answer to the interrogatory herein was in favor of appellants, they certainly cannot complain of any error in the instructions, for correct ones could not have produced a verdict any more favorable to them.

The first and second assignments depend on whether there was competent evidence to support the finding of the court that the indebtedness of appellants to the Bank was fully paid and discharged

as a result of the agreement of July 6th, 1921. If it was, even though a trust originally existed by the agreement of February 9th, 1921, it was terminated and discharged by the later agreement, and if that later agreement was supported by a sufficient consideration, it was valid. The cancellation of an indebtedness of over one hundred thousand dollars, as found by the trial court, would certainly be a sufficient consideration, and since there is no assignment of error to the effect that the evidence is insufficient to support the findings of the court on that point, we must presume there is enough evidence in the record to sustain them. *Andrade* v. *Andrade,* 14 Ariz. 379, 128 Pac. 813; *County of Pinal* v. *Heiner,* 24 Ariz. 346, 209 Pac. 714. Such being the case, when the agreement of February 27th, 1922, was made, appellants had no interest in the lands in question, and were to acquire such interest only on condition precedent that they exercised the options described therein. Since they failed to do so, the trust which would have arisen had the options been carried out never came into being. No trust existing at the time this suit was filed, it is immaterial as to the value of the property originally held in trust. If in the pleadings there appeared proper allegations that the agreements of February 9th, 1921, or July 6th, 1921, were obtained by fraud, it is possible that in some circumstances evidence of the true value of the property would have been admissible as bearing on the question of fraud. But the pleadings do not raise any issues permitting the admission of evidence for that purpose, and since the court found no trust existed when the suit was brought, it was, of course, inadmissible for any other purpose.

In view of our conclusions stated as above, we need not consider the cross-assignments of error. Judgment affirmed.

McALISTER and ROSS, JJ., concur.