634 P.2d 13

**WOOLDRIDGE CONSTRUCTION COMPANY, an Arizona Corporation, Plaintiff-Counter-Defendant-Appellant,**

v.

**FIRST NATIONAL BANK OF ARIZONA, a national banking association, Defendant-Counter-Claimant-Appellee.**

No. 1 CA–CIV 4687.

Court of Appeals of Arizona,
Division 1,
Department B.

July 16, 1981.

Rehearing Denied Aug. 27, 1981.

Review Denied Sept. 22, 1981.

Goldman & Kaplan, Ltd. by Alan Goldman and Mark E. Meltzer, Phoenix, for plaintiff-counter-defendant-appellant.

Behrens, MacLean & Jacques, Ltd. by Cary T. Inabinet and Streich, Lang, Weeks & Cardon by Charles W. Jirauch, Phoenix, for defendant-counter-claimant-appellee.

## OPINION

HAIRE, Presiding Judge.

This appeal involves two questions:

1) Did appellant, Wooldridge Construction Company, Inc., a general contractor, timely file its mechanic's lien, pursuant to A.R.S. § 33–993, and, if it did,

2) Is appellant's lien entitled to priority over First National Bank's deed of trust, pursuant to A.R.S. § 33–992?

Procedurally, the appeal is from a judgment after a full evidentiary trial with an advisory jury in equity proceedings. The proceedings involved various parties and claims. The only aspect pertinent to this appeal is that appellee First National Bank sought to foreclose its deed of trust and that appellant sought to establish the priority of its allegedly enforceable mechanic's lien claim on the same property. Appellant appeals from that portion of the trial trial court's judgment declaring that appellant had no enforceable materialmen's lien against the subject property and foreclosing First National Bank's deed of trust as against Wooldridge.

Before proceeding to the resolution of the substantive legal questions presented, we first delineate the material facts. In so doing we must view the evidence in a light most favorable to the appellee, resolving conflicts in the evidence in favor of sustaining the judgment. *See Wilson v. Coerver*, 35 Ariz. 488, 279 P. 253 (1929).

In February 1974, appellant contracted to construct a two-story, steel-frame office building for Deise Realty, Inc., (hereinafter Deise), the owner of the property. Shortly thereafter, and pursuant to the overall construction contract, appellant commenced preparation of the site. By March 11, 1974, appellant's subcontractor had removed trees, grass and weeds, cut curbs and sidewalks, removed irrigation pipes, and scarified the land.

Appellee, First National Bank, provided Deise with financing for the construction project, taking a deed of trust on the property as security for the loan. The deed was recorded at 8:00 a.m. on March 11, 1974. At the time appellant's subcontractor had begun work on the site, appellant had no

actual or constructive knowledge of First National Bank's deed of trust.

The construction of the building continued throughout the summer. By August the building was ninety percent complete and approximately forty percent of the contract price had been paid. In early September 1974, the building's power was turned on and Deise began occupying one small area, although some of appellant's subcontractors were still working in other areas of the building. Also during September, appellant applied for full payment and determined that the project was "substantially complete" which, by contract, precipitated an inspection by an architect. Thereafter an architect inspected the building, compiling a detailed "punch list" of the items that needed to be changed or added in order to comply with the terms of the contract. By letter dated November 20, 1974, Deise presented appellant with this "punch list". He demanded that appellant promptly correct the work, with holding full payment until the requested changes were made and basing his request upon his rights under the terms of the contract.

The uncontroverted evidence reveals that at least ninety hours of work were done by appellant's crews after November 28, 1974, including the following:

1) Re-plumbing a drinking fountain
2) Smoothing rough concrete
3) Re-striping the parking lot
4) Replacing ceiling tiles
5) Installing missing duct insulation
6) Touching-up interior paint
7) Caulking joints
8) General cleanup

This work was done pursuant to the owner's request and to accommodate his interpretation of the contract. The owner had retained a percentage of the contract price and conditioned payment of that fund upon prompt and satisfactory completion of the work. This procedure was provided for in the contract and the work performed was not a mere afterthought on the part of appellant. There is no allegation that the work done was intended to circumvent the statutory time limitation on the filing of materialmen's liens.

Appellee, in his brief, raised questions as to whether the facts as stated above could properly be relied upon by this court in view of the trial court's rejection of certain advisory jury findings. The trial was conducted as an equity proceeding before a judge with an advisory jury. *See* Rule 39(*1*), Rules of Civil Procedure, 16 A.R.S. The trial court could either accept or reject the jury's findings, as they were advisory only. *See* Rule 39(*1*), Rules of Civil Procedure, 16 A.R.S.

■ In the event an advisory jury's findings are rejected, a trial court usually makes findings of its own, *see* Rule 52(a), Rules of Civil Procedure, 16 A.R.S., in which case the court's findings, not the jury's, are those upon which the judgment is based. *Merryweather v. Pendleton*, 90 Ariz. 219, 367 P.2d 251 (1961); *Mullins v. Horne*, 120 Ariz. 587, 587 P.2d 773 (App. 1978). In such a case the court becomes the trier of fact and if there is substantial evidence to support the trial court's finding on an issue, it must be left undisturbed on appeal. *Mullins v. Horne, supra.*

■ In the present case, however, the trial court made no factual findings independent of the jury's findings. The final judgment included a section entitled "Findings of Fact and Conclusions of Law", in which the court recited the four interrogatories propounded to the jury, together with the jury's answers. With respect to two of the answers, the court made no further comment. In that context we must assume that the court adopted those findings. They were as follows:

"INTERROGATORY # 1

"I instruct you that the Bank's Trust Deed was recorded at 8:00 o'clock a. m. on Monday, March 11, 1974. Do you find that any labor was performed on the site of the Deise Building, or materials furnished to the site before the Bank's Trust Deed was recorded.

"Answer: Yes.

"INTERROGATORY # 3

"Do you find that the Plaintiff, WOOLDRIDGE, had actual or constructive notice of the Bank's Trust Deed at the time any labor was commenced or materials furnished to the site of the Deise Building?

"Answer: No."

The court, however, rejected the jury's answer to the other two interrogatories. Interrogatory # 2 read as follows:

"INTERROGATORY # 2

"If you find that any labor was performed on the site of the Desie [sic] Building, or materials furnished to the site before the Bank's Trust Deed was recorded, then list what work was performed or materials furnished that you so found.

"Answer: Removal of trees; removal of weeds and grass, cutting of curbs, sidewalks; removal of irrigation pipes; scarification of land."

The court made no findings of its own relative to what work was performed before the FNB trust deed was recorded. Rather, it rejected the answer, stating:

"The Court found that the answer to Interrogatory No. 2 did not, as a matter of law, establish a lien claim by Wooldridge Construction Company and the Court rejected the answer under its equity jurisdiction."

Appellee First National Bank would have us treat this as an express rejection of the evidence that the above-listed work was done before the deed was recorded. However, the record is uncontroverted that this work was done, the only controversy being over whether certain building pads had been poured. Therefore in light of the uncontroverted evidence, the unrejected findings above, and the court's explanation of its rejection, we do not view the court's rejection as a finding that the work was not done. Rather we view it as a legal conclusion that the work listed was insufficient to establish appellant's priority over the bank's deed of trust under A.R.S. § 33–991. Were

the trial court to have found that this site preparation work were not done, that finding would have been clearly erroneous and without support in the evidence. *See* Rule 52(a), Rules of Civil Procedure, 16 A.R.S. Deise, the owner, testified to this work having been done before the deed was recorded. There was nothing intrinsic to his testimony which would permit its rejection, nor was there any extrinsic evidence offered to controvert or conflict with his testimony.

The court also rejected Interrogatory # 3 [sic][1] "as being ineffective on the judgment as a matter of law." That interrogatory asked:

"INTERROGATORY # 3 [sic]

"Did Wooldridge Construction Company perform any work upon the premises toward the fulfillment of the construction contract, or to conform with the owners' interpretation of the construction contract, other than minor repairs or adjustments, after November 28, 1974?

"Answer: Yes."

Again, the trial court made no specific finding with respect to what work was done after November 28, 1974, its quality or its quantity. Rejection of the answer could have been a rejection of any one or all of the aspects of this compound question. Alternatively, it could have been a rejection of the question itself as being immaterial to the legal questions presented. In any event, and for whatever reason, the answer was rejected and will not be considered in reviewing the judgment. We do not consider the rejection itself, standing alone and subject to various interpretations, as any specific finding of fact by the trial court. Thus we are left with the record as presented on appeal, which has been viewed in a light most favorable to sustaining the judgment, resolving all conflicts in evidence in favor of appellee.

Proceeding to the substantive legal questions involved, we first address whether appellant complied with the time limita-

1. This was actually the fourth interrogatory, improperly numbered in the trial court, and thereafter referred to as "# 3 [sic]".

tions imposed on original contractors for impressing and securing materialmen's liens under A.R.S. § 33–993 (1974) (before 1979 amendments).[2] The statute requires original contractors to record their liens "within ninety days ... after *completion of a building, structure, or improvement, or any alteration or repair thereof.*" (Emphasis added). Appellant recorded his lien on February 28, 1975. Both parties agree that November 28, 1974, is the critical date—if "completion" occurred on or before then, appellant's lien failed for lack of timely perfection; if "completion" occurred after November 28th, appellant had an enforceable lien, with its priority being the only remaining question.

■ As previously discussed, it is undisputed that appellant had workers working on the site after November 28, 1974. In support of the judgment, appellee argues that the statutory period for filing notice begins running when a contractor has substantially complied with the terms of his contract. It argues that the evidence was sufficient to support a trial court's conclusion that substantial compliance occurred in September, with the later work being "merely cosmetic or trifling", and consisting of only minor repairs or adjustments, citing *Morgan v. O'Malley Lumber Co.*, 39 Ariz. 400, 7 P.2d 252 (1932), and *Turf Irrigation & Water Works Supply Co. v. Lawyers*

*Title of Phoenix*, 24 Ariz.App. 80, 535 P.2d 1311 (1975).

The Supreme Court most recently discussed the "completion" requirement of A.R.S. § 33–993 in *Gene McVety, Inc. v. Don Grady Homes, Inc.*, 119 Ariz. 482, 581 P.2d 1132 (1978). There, the court refused to interpret *Morgan v. O'Malley Lumber Co., supra,* as having adopted "substantial completion" as the time at which the time for filing begins to run. Relying upon A.R.S. § 33–993 B, which provides that "'completion' means actual completion", the court stated, "This statutory language is plain, simple and precise and does not permit of uncertainty." It distinguished *Morgan v. O'Malley Lumber Co.*, demonstrating that the work done after the critical date in *Morgan v. O'Malley Lumber Co.* was not required by the contract. The *McVety* court further stated:

> "*Work actually called for by the contract* will permit the filing of the lien within 60 days after the doing of the last work. If work is done or materials furnished to complete the original contract, the time for filing the lien runs from the last furnishing of labor and materials."

(Emphasis added; citations omitted). 119 Ariz. at 484, 581 P.2d at 1134.

We believe this rationale is the crux of *McVety*, and adequately distinguishes *Morgan v. O'Malley Lumber Co.*

---

2. A.R.S. § 33 993 (1974) read:

§ 33-993. Procedure to perfect lien; notice and claim of lien; service; recording; definition

"A. In order to impress and secure the lien provided for in this article, *every original contractor, within ninety days*, and every other person claiming the benefits of this article, within sixty days *after the completion* of a building, structure or improvement, or any alteration or repair thereof, shall make duplicate copies of a notice and claim of lien and record one copy *with the county recorder* of the county in which the property or some part thereof is located, and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement, if he can be found within the county. The notice and claim of lien shall be made under oath by the claimant or someone with knowledge of the facts, and shall contain:

"1. The legal description of the lands and improvements to be charged with a lien.

"2. The name of the owner or reputed owner of the property concerned, if known, and the name of the person by whom the lienor was employed or to whom he furnished materials.

"3. A statement of the terms, time given and conditions of the contract, if it is oral, or a copy of the contract, if written.

"4. A statement of the lienor's demand, after deducting just credits and offsets.

"5. A statement of the date of completion of the building, structure or improvement, or any alteration or repair thereof.

"B. For the purposes of subsection A, *'completion' means actual completion of the work.* Completion shall also be deemed to have occurred upon cessation of labor for a period of sixty consecutive days on the property upon which a lien is claimed. Cessation of labor due to a strike, shortage of materials or act of God shall not be considered a cessation of labor for purposes of this subsection."

(Footnote omitted; emphasis added).

The confusion arises from the *McVety* court's further discussion of a quote from an Oregon case, *Fox & Company v. Roman Catholic Bishop*, 107 Or. 557, 215 P. 178 (1923), which the *Morgan* court had quoted with approval. That quote suggested that the critical date for completion under the Oregon statute was the date by which the contractor had " 'substantially complied with the terms of his contract' ". *McVety, supra*, 119 Ariz. at 484, 581 P.2d at 1134. It is unclear whether, in distinguishing *Morgan*, the *McVety* court was rejecting the Oregon analysis in its entirety. The *McVety* court left open the possibility, and, perhaps suggested, that some work in the nature of repairing defects and remedying inferior workmanship might be so "trifling" as to not justify postponing the time limitation for filing liens. However, to the extent that this possibility exists, appellant's work cannot be considered so inconsequential as to be "trifling", particularly in view of the remedial nature of the mechanic's lien laws, *see, Leeson v. Bartol*, 55 Ariz. 160, 99 P.2d 485 (1940); *Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 561 P.2d 750 (App. 1977). The work took at least ninety hours and was done to comply with the owner's interpretation of the contract, *see Leeson v. Bartol, supra*. Neither party has suggested that appellant acted other than in perfect good faith, or that it in any way attempted to postpone the completion of the contract. *See Leeson v. Bartol, supra*. Under these circumstances, the time for filing appellant's lien is calculated from the last date work was performed on the site to comply with the owner's demands under the original contract.

Appellee's reliance upon *Turf Irrigation, supra*, is misplaced in that the *Turf* court specifically noted that the work performed by the lien claimants in that case was not required by their original contract. 24 Ariz. App. at 83, 535 P.2d at 1314. Thus, the Court of Appeals held that the work did not extend the statutory time for filing the lien based on the original contract.

We conclude that appellant has an enforceable lien against the subject property.

The next question is whether appellant is entitled to priority over appellee First National Bank's trust deed under A.R.S. § 33–992, which provides:

"§ 33–992. Preference of liens over subsequent encumbrances

"The liens provided for in this article, unless otherwise specifically provided, are preferred to all liens, mortgages or other encumbrances upon the property *attaching subsequent to the time the labor was commenced or the materials commenced to be furnished.* The liens provided for in this article are also preferred to all liens, mortgages and other encumbrances of which the lienholder had no actual or constructive notice at the time he commenced labor or commenced to furnish materials."

(Emphasis added).

Appellee does not dispute that a lien for labor and materials furnished pursuant to a contract for the construction of a building includes a claim for earthwork and site preparation furnished pursuant to the same contract. The question is one of establishing priority, i. e., whether the lien for the entire construction contract can be given *priority* over a deed of trust, where the only work performed under the contract before the trust deed was recorded was the initial earthwork and site preparation.

The deed of trust attached on March 11, 1974, subsequent to the time that appellant's subcontractor commenced labor on the site. Appellee, however, argues that A.R.S. § 33–992 requires appellant to establish that the actual erection of the building or excavation for its foundation had begun. Appellee would have us determine that the statutory phrase "subsequent to the time *labor commenced*", actually means "subsequent to the time *construction of a building commenced.*" (Emphasis added). The issue would then become when the building was commenced rather than when labor commenced, appellee further contending that earthwork and site preparation do not constitute commencement of the construction of a building.

The Arizona courts have never decided this issue. Appellee cites *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 8 P.2d 256, 83 A.L.R. 918 (1932), but it lends no support to appellee's position. The question before that court was whether a subcontractor's lien related back to the time another subcontractor's excavation commenced. The court wrote the opinion on the assumption that the excavation for the building was sufficient commencement to establish priority under the language of A.R.S. § 33–992. The language used by the court to paraphrase A.R.S. § 33–992 cannot influence our decision. Similarly, this court in *Wahl v. Southwest Savings & Loan Assn.*, 12 Ariz. App. 90, 467 P.2d 930 (1970), considered the relation-back doctrine under A.R.S. § 33–992, not the question of labor commencement presently before us.

Appellee also cites cases from other jurisdictions, several of which have determined that earthwork is insufficient to establish a priority position under certain mechanic's lien statutes. Research of these cases has confirmed an earlier observation made by the Arizona Supreme Court that although the general aspects of the laws in other states are very similar, they vary so greatly in their details that their construction is of doubtful assistance in construing our laws. *Wylie v. Douglas Lumber Co., supra.* The *Wylie* court further noted that the Arizona legislature intended that materialmen be jealously protected. Therefore, we analyze the requirements for establishing priority of an enforceable mechanic's lien under the language of the Arizona mechanic's lien statutes, rather than by reaching to other jurisdictions for precedent.

In support of its interpretation of A.R.S. § 33–992, appellee urges that such an interpretation would assure that other secured parties, by looking at the site, would have actual or constructive notice that a building is soon to be erected for which mechanic's liens might have already attached. This would provide parties such as appellee with notice sufficient to trigger further investigation. Presumably the party could then attempt to secure lien waivers or require security in addition to the potentially liened property, or refuse to provide financing.

Appellee's analysis presupposes that earthwork and site preparation never provide notice of impending construction of a building sufficient to trigger an investigation of that possibility. If the critical question were whether the trustor or mortgagor had notice of the impending construction, the answer would not necessarily hinge upon a determination that erection of the building had commenced. In the context of the present appeal, the First National Bank provided interim financing for the building and was presumably aware of the impending construction. It would not be reasonable for us to assume, for the purposes of construing the statute, that the earthwork, cutting curbs and sidewalks, etc., was not noticeable or that appellee did not or should not have been put on sufficient notice to investigate the possibility that this work was the beginning of the overall construction project. Appellee's statutory construction does not merely add a notice test to the statute. Rather, it would preclude a finding of notice unless the actual physical erection of the building had begun. With no such requirement imposed by the language of the statute, we hesitate to impose it by statutory interpretation.

Moreover, the suggestion that earthwork done pursuant to a general construction contract is not sufficient to establish the priority of an enforceable mechanic's lien is not supported by a contextual reading of the statute. Unlike many other jurisdictions, Arizona's statutory scheme provides a lien for labor or materials furnished "in the clearing, ditching, bordering or leveling of land." A.R.S. § 33–987. Thus there can be no argument that the legislature did not intend to create a lien for labor or materials involved in earthwork, even though unrelated to a contract for the construction of a building or other improvement. A.R.S. § 33–992 would clearly provide for priority with respect to such a lien from the time labor was commenced on the site. In this context, we cannot believe that the legislature intended to deny the availability of a lien pursuant to A.R.S. § 33–981 for similar

work when it has been performed as a part of the work required under a general contract for the construction of a building. The priority statute does not impose any special condition for obtaining priority for liens arguably created under A.R.S. §§ 33–981 or 33–983, as opposed to liens created under § 33–987. Rather, A.R.S. § 33–992 establishes priority for *all* of the liens provided for in the article on mechanic's liens.

 We hold, therefore, that earthwork and site preparation performed pursuant to the requirements of a general overall building construction contract constitute a sufficient commencement of labor to establish priority under A.R.S. § 33–992 for all work performed pursuant to that general construction contract. In this connection, we emphasize that, by our holding in this case, we are not expanding the "relation-back" principles of A.R.S. § 33–992 so as to grant priority to work done under subsequent independent contractual arrangements entered into directly with the owner. *See Wylie v. Douglas Lumber Co., supra,* in that regard. Rather insofar as it concerns the relation-back principles of A.R.S. § 33–992, our holding is limited to establishing priority for work performed as a part of the general contract for the construction of the building.

 Appellee's final argument in support of the judgment is that appellant did not sufficiently prove the amount of the lien, despite the fact that judgment was entered in favor of appellant against Deise for breach of contract in the amount of $46,-623.73 plus costs and interest. Appellee argues that to permit appellant a lien based upon the amount due on the general contract has the effect of benefiting subcontractors who, for various reasons, would not be entitled to recover in their own right against Deise. While this position is creative, we do not accept it. Appellee has been unable to cite any statutory or decisional authority for it. Appellant, as a general contractor in privity with the owner, has a lien based upon the amount due under the general contract. *Parker v. Holmes,* 79 Ariz. 82, 284 P.2d 455, 51 A.L.R.2d 1005

(1955). Appellant's lien may not be reduced by the amount which appellant may ultimately pay to subcontractors who have for some reason lost their lien rights.

The judgment of the trial court is reversed and the matter is remanded with directions to enter judgment for the appellant.

JACOBSON and EUBANK, JJ., concur.