759 P.2d 607

**SCOTTSDALE MEMORIAL HEALTH SYSTEMS, INC., an Arizona corporation, Plaintiff/Counter–Defendant/Appellant,**

**v.**

**Lawrence G. CLARK, individually and dba Larry Clark Construction Co.; Dorothy Clark, wife of Lawrence G. Clark, Defendants/Counter–Claimants/Appellees.**

**No. CV–87–0217–PR.**

Supreme Court of Arizona,
En Banc.

May 10, 1988.

Reconsideration Denied July 12, 1988.

462

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Phillip Weeks, Donald N. McIntyre, Michael S. Rubin, Phoenix, for plaintiff/counter-defendant/appellant.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Larry L. Smith, Philip C. Gerard, Phoenix, and Scott M. Clark, Scottsdale, for defend-ants/counter-claimants/appellees.

FELDMAN, Vice Chief Justice.

Scottsdale Memorial Health Systems, Inc. (Scottsdale) petitions us to review an opinion of the court of appeals. We are asked to determine whether a party whose title is derived from a nonjudicial fore-closure of a deed of trust is bound by a judgment taken against the original owner by the holder of a mechanic's lien. The lien foreclosure judgment was obtained in a case in which Scottsdale, the purchaser at the foreclosure sale, was not a party. This being a question of first impression, we granted review. *See* Rule 23(c), Ariz.R.Civ. App.P., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## I. FACTS

This case has been in litigation for over ten years. The procedural history is some-what confusing. Simplifying as much as possible, the facts are as follows:

### A. The Property

In 1976 North Scottsdale Associates No. 3 Limited Partnership (NSA) owned a tract of land at Shea Boulevard and Pima Road in northern Scottsdale. NSA contracted with Lawrence G. Clark, doing business as Larry G. Clark Construction Company (Clark), to build a medical office building on the property for $871,000. On Novem-ber 8, 1976, before Clark's construction work had begun, NSA arranged construc-tion financing with Western American Mortgage Company (WAMCO). Clark be-gan construction on November 12, 1976. The WAMCO loan on NSA's property was secured by a deed of trust which apparent-ly was first recorded about eighteen months *after* Clark's work commenced.

NSA became disenchanted with Clark's performance and stopped payments on the construction contract. On January 27, 1978, NSA sued Clark for fraud and breach of contract. On February 7, 1978, shortly after WAMCO recorded its deed of trust on the property, Clark recorded a notice of mechanic's lien in compliance with A.R.S. § 33–993. Under A.R.S. § 33–992, priority between Clark's mechanic's lien and WAM-CO's deed of trust was determined by the date on which Clark commenced work, rather than the date on which the lien was recorded. The lienor has priority over all encumbrances of which he has neither actu-al nor constructive notice at the time his work begins. A.R.S. § 33–992. Thus, Clark's mechanic's lien was prior in time to the lien of WAMCO's deed of trust.

Clark filed a counterclaim against NSA, seeking, *inter alia*, foreclosure of the me-chanic's lien. The counterclaim for fore-closure against NSA was filed within the six-month limitation period mandated by A.R.S. § 33–998 for foreclosure of mechan-ic's liens after recording. Clark neither joined WAMCO as a counter-defendant nor filed a separate foreclosure action against WAMCO or other parties asserting an in-terest in the property. Moreover, Clark did not file a lis pendens. A.R.S. § 12–1191.

The scene now shifts. On November 22, 1978, while Clark's lien foreclosure claim was pending against NSA, WAMCO as-signed its deed of trust to Smith. NSA failed to pay the sums due on the WAMCO construction loan and Smith exercised his rights as beneficiary of the deed of trust. He gave notice to NSA under A.R.S. § 33–808 and –809 and accelerated the bal-ance due. Pursuant to A.R.S. § 33–810, the trustee held a nonjudicial foreclosure sale of the property on July 10, 1979. Con-trary to the requirement of statute, notice of this trustee's sale was *not* sent to Clark, despite his previously recorded mechanic's lien. *See* A.R.S. § 33–809(B)(2). Smith was the successful bidder at the sale, ac-quiring fee title to the property and thus apparently terminating NSA's ownership interest. *See* A.R.S. § 33–811(B). On Au-gust 26, 1981, Smith conveyed its entire interest in the property, whatever it might have been, to Scottsdale.

## B. The Prior Judgment

Meanwhile, the litigation between Clark and NSA had continued. After the case had been pending almost four years and NSA's interest in the real property had been foreclosed at Smith's trustee's sale, NSA and Clark entered into a settlement agreement which, on March 4, 1982, resulted in a consent judgment. Clark agreed to release NSA from any monetary claims arising from the original construction contract and NSA agreed that Clark could take judgment foreclosing its lien in the amount of $181,736.17. Clark agreed that it would not attempt to recover any deficiency from NSA on the lien foreclosure sale. NSA and Clark further agreed that any profit resulting from Clark's acquisition of title to the property in the lien foreclosure proceeding would be divided equally between NSA and Clark.

## C. This Case: Trial Court Proceedings

On April 18, 1982, Clark noticed a sheriff's sale under the foreclosure judgment. Scottsdale brought this action the next day to enjoin the sheriff's sale and quiet title to the property. Clark counterclaimed, seeking a declaratory judgment establishing the priority of its lien over Scottsdale's claim of title. The trial court enjoined the sale to unravel the complex situation. Scottsdale then moved for summary judgment, claiming that it was not bound by Clark's judgment against NSA and that the six-month mechanic's lien statute of limitations barred Clark from attempting to foreclose its lien against Scottsdale. The trial court denied the motion.

Before the bench trial began in March of 1985, the trial court took "judicial notice" of the 1982 foreclosure judgment and held that it "prima facie" established Clark's lien rights to the property. However, the court granted Scottsdale an opportunity to dispute and relitigate the amount, priority and validity of Clark's "in rem judgment lien."

At trial, the parties vigorously disputed all aspects of the lien and the foreclosure judgment. Both Clark and his construction superintendent testified about the original project work and expenditures. Architects and accountants carefully reconstructed and categorized the expenses constituting the lien. The court heard testimony suggesting that there may have been embezzlement, fraud and collusion connected both with the construction project and with the consent judgment. The parties introduced scores of documents bearing upon the amount and validity of the Clark lien.

At the end of the bench trial, the trial judge prepared a lengthy minute entry explaining his ruling in favor of Clark. Several months later, he made detailed findings of fact and conclusions of law. Having taken "judicial notice" of Clark's judgment against NSA and accorded it "prima facie effect,"[1] the trial judge concluded that Scottsdale had not carried its burden of disproving the priority, validity or amount of Clark's lien on the property.[2] The court therefore entered judgment for Clark, holding that Clark's lien was prior to any interest that Scottsdale might claim to the property, that the lien was valid, and that Clark could assert the amount established in his action against NSA as his claim against Scottsdale's interest in the property.[3] Because Clark had begun foreclosure proceedings against the owner of the property within six months of the date of filing his lien, the court held that Clark was not barred by A.R.S. § 33–998 from asserting the lien against Scottsdale, even though Scottsdale's predecessors had not been joined in the foreclosure action. The court ordered the sale of the property to satisfy the foreclosure judgment, plus interest and attorney's fees due Clark. Scottsdale appealed.

## D. Relevant Issues Decided by the Court of Appeals

The court of appeals affirmed the judgment. *Scottsdale Memorial Health Sys-*

---

1. Minute Entry (hereafter "ME"), May 13, 1985, at 3. Findings of Fact (hereafter "FF"), Conclusions of Law (hereafter "CL") and Judgment, October 1, 1985, at CL Nos. 2 and 3.

2. ME at 12–13; CL No. 7.

3. FF No. 19.

*tems, Inc. v. Clark,* 157 Ariz. 456, 759 P.2d 602 (Ct.App.1987). It held that the statute of limitations was tolled when Clark sued the fee owner in the original foreclosure action. At 458–459, 759 P.2d at 604–605. Thus, Clark's failure to name the junior encumbrancer, WAMCO, did not bar a subsequent action for adjudication of priority between his lien and WAMCO's encumbrance. More importantly, because Scottsdale's predecessor took title from NSA while Clark's lien foreclosure action against NSA was pending, that title was acquired subject to the outcome of Clark's action against NSA. At 459, 759 P.2d at 605, citing *Collins v. Stockwell,* 137 Ariz. 416, 671 P.2d 394 (1983). This result obtained because Smith, Scottsdale's predecessor, had constructive notice of the lien at the time he acquired title. At 460, 759 P.2d at 606. Thus, Scottsdale suffered no due process deprivation; its predecessor in title had "constructive notice" of the pending foreclosure litigation because of the recorded mechanic's lien and could have intervened at any time. *Id.* Finally, because it could not show the prior judgment was invalid because "of collusion, fraud or ... conspiracy," the court of appeals held that Scottsdale could not contest the validity, priority or amount of the lien. *Id.* at 459, 759 P.2d at 605. We granted Scottsdale's petition for review.

## II. PRESENT ISSUES

The issues we find central to the resolution of this case are:

1. Did the junior encumbrancer, WAMCO, take title subject to Clark's mechanic's lien?

2. Was Scottsdale, the successor to the junior encumbrancer, "bound" by the judgment that Clark, the lienholder, obtained against the former owner of the encumbered property?

3. Did the title obtained by Scottsdale's predecessor at the nonjudicial foreclosure sale give Scottsdale priority over Clark, the senior lienholder?

4. What is the limitations period within which a mechanic may foreclose his lien? Are lien rights lost against parties not foreclosed within six months of the time the lien was filed?

## III. DISCUSSION

### A. Title Subject to the Lienholder's Claim

Clark argues that Scottsdale took title to the property subject to Clark's recorded mechanic's lien claim. We agree. *Collins* held the mechanic's lien statute does not require a contractor to file a notice of lis pendens to ensure constructive notice and enforceability of his lien against a subsequent purchaser. 137 Ariz. at 420, 671 P.2d at 398.

The fact that Scottsdale had constructive notice of the continued existence of the mechanic's lien, however, does not mean that Scottsdale had constructive notice of Clark's pending action to foreclose its lien against NSA. Constructive notice of the lien simply meant that Scottsdale was legally on notice of the priority rights of Clark's lien and that at some point he might bring legal action in an attempt to foreclose Scottsdale's interest in the property. We do not read *Collins* as considering whether the mere existence of a recorded lien claim also gives constructive notice of a pending action to foreclose the lien. *See Collins,* 137 Ariz. at 418, 671 P.2d at 396, characterizing the issue: "Is it necessary to file a notice of lis pendens in order to give constructive notice of a mechanic's lien ...?" We do not think *Collins* decided that point. 137 Ariz. at 420, 671 P.2d at 398. Nor do we believe such a rule is supportable.

Constructive notice through recording of instruments is a creature of statute, unknown to the common law "and not of common right or abstract justice." 66 Am. Jur.2d *Records and Recording Laws* § 47 (1973). Thus, both the need to record and the effect of recording "rest solely on statute." *Id.; see also* R. CUNNINGHAM, W. STOEBUCK, D. WHITMAN, THE LAW OF PROPERTY §§ 11.9–11.11 (1984); R. BOYER, SURVEY OF THE LAW OF PROPERTY 476–83 (3d ed. 1981); 8 G. THOMPSON, THOMPSON ON REAL PROPERTY §§ 4293–98 (1963).

■ The Arizona statutes governing recording provide only that recording of an instrument gives constructive notice of the existence of the instrument. A.R.S. § 33–416. The statutes governing liens do not provide that recording a lien does more than perfect and give constructive notice of the claim of lien. A.R.S. §§ 33–992 and –993. The statute that specifically governs constructive notice of the pendency of litigation affecting the title to real estate provides for such notice from the date of recording of lis pendens. A.R.S. § 12–1191(B). Given the statutory scheme, we reject the proposition that recording a claim of lien also gives constructive knowledge of the existence of a subsequently filed action to foreclose that lien. Only compliance with the lis pendens statute can accomplish that goal.

■ We hold, therefore, that because Clark complied with the recording statute in filing his notice and claim of lien, Scottsdale and its predecessors in title had constructive knowledge of the existence of Clark's lien claim, notwithstanding his failure to file a lis pendens when an action to foreclose that lien commenced. *Collins, supra.* The failure to file a lis pendens, however, negates Clark's claim that Scottsdale and its predecessors had constructive knowledge of the pendency of Clark's foreclosure action against NSA, the fee owner.

B. Effect of the Senior Lienholder's Judgment

Clark asserts that Scottsdale was "bound" by the judgment that Clark obtained against the original fee owner of the property. The trial court adopted this argument to some extent, and decided to accept the Clark judgment against NSA as "prima facie" evidence of the validity, priority and amount of Clark's lien. The trial court then gave Scottsdale the opportunity and burden of attacking the lien. The court also allowed Scottsdale to attack the foreclosure judgment itself on the grounds that it was the product of fraud and collusion between Clark and NSA. When Scottsdale was unable to meet its burden of proof on these matters, the trial court

found in favor of Clark. We believe the trial court was mistaken in its treatment of the foreclosure judgment.

■ In general, a person who is not a party to an action is not bound by the result. *See* Restatement (Second) of Judgments § 34(3) (1982) (hereafter "Restatement"). Whether by way of res judicata or collateral estoppel, the preclusive effect of a judgment is limited to parties and persons in privity with parties. *See Fremont Indemnity Co. v. Industrial Commission,* 144 Ariz. 339, 342, 697 P.2d 1089, 1092 (1985) ("a stranger to a litigation may not be bound by a determination made therein for purposes of subsequent litigation"); *Farmers Insurance Co. of Arizona v. Vagnozzi,* 138 Ariz. 443, 675 P.2d 703 (1983). *See also* 50 C.J.S. *Judgments* § 788 (1947). Thus, a judgment in an action against a mortgagor is not binding on the mortgagee unless it was made a party to the action or actively participated in the litigation. *Id.* at § 803; *National Public Service Insurance Co. v. Welch,* 81 Ariz. 156, 302 P.2d 926 (1956).

■ Different concerns are implicated when real property is transferred while an action is pending. A successor in interest of property that is transferred while it is the subject of a pending action is normally bound by the results of the litigation, *unless:*

(1) A procedure exists for notifying potential successors in interest of pending actions concerning property, the procedure was not followed, and the successor did not otherwise have knowledge of the action; or

(2) The opposing party in the action knew of the transfer to the successor and knew also that the successor was unaware of the pending action.

Restatement § 44.

■ As discussed earlier, Clark did not comply with the statutory lis pendens procedure to give potential successors in interest constructive notice of the pending foreclosure action. A.R.S. § 12–1191. If he had, the purchasers of the property would have taken title subject to whatever judg-

ment might later be rendered in that action. Restatement § 44(1); *see also Tuft v. Federal Leasing*, 657 P.2d 1300, 1302 (Utah 1982). So far as the record shows, neither Smith nor Scottsdale had actual notice of Clark's pending foreclosure action.

Thus, the resulting foreclosure judgment had no preclusive effect on Scottsdale's rights in the property. Restatement § 44 comment c; *Seafirst Mortgage Corp. v. Specialty Concrete Construction*, 708 P.2d 1245, 1247 (Wyo.1985) (failure to join mortgagee in mechanic's lien foreclosure action is not fatal to the action, but the resulting judgment does not affect the mortgagee's interests). *See also Paramount Securities Co. v. Daze*, 128 Cal. App. 515, 17 P.2d 1049 (1933) (only parties joined within ninety days of filing the mechanic's lien are bound by the judgment); *Davis v. Bartz*, 65 Wash. 395, 118 P. 334 (1911) (lien "expired by force of the statute" as to party not joined in foreclosure action).

Clark reads *Ballard v. Lawyers Title of Arizona*, 27 Ariz.App. 168, 552 P.2d 455 (1976), as holding to the contrary. We do not. *Ballard* states that one who purchases realty while a foreclosure action is pending "is bound by the judgment *if* he had notice of the foreclosure." 27 Ariz.App. at 170, 552 P.2d at 457 (emphasis added). As discussed above, neither Scottsdale nor its predecessors had notice, actual or constructive, of Clark's pending action to foreclose his lien. Rather ingeniously, Clark combines the holding in *Collins* with the quoted words in *Ballard* and concludes that Scottsdale's predecessors had constructive notice of the pending foreclosure action. This proposition obscures the true issues. As demonstrated earlier, the *Collins* rule charged Scottsdale and its predecessors with constructive notice of the lien, not of the foreclosure action.

Clark suggests one further ground for his claim that Scottsdale is "bound" by the judgment in the lien foreclosure case. He argues that when Smith, Scottsdale's predecessor, acquired NSA's fee title by purchase at the nonjudicial forfeiture sale,

a merger of title occurred so that Smith and Scottsdale were bound by Clark's subsequent judgment foreclosing the lien against that title. The argument fails for two reasons. First, even if the common law doctrine of merger of title is applied, it certainly cannot mean that a creditor who buys at the sale foreclosing his security interest ends up with fewer rights than he had before.

Even assuming that Clark's subsequent judgment against NSA terminated whatever rights Smith acquired from NSA, we know of nothing to support the further conclusion that it also destroyed the previous rights Smith held as a secured creditor. The doctrine of merger of title is never applied to lessen the rights of a creditor who acquires fee interest. *See Aladdin Heating Corporation v. Trustees of the Central States*, 93 Nev. 257, 563 P.2d 82 (1977). *See also Deming National Bank v. Walraven*, 133 Ariz. 378, 380 n. 4, 651 P.2d 1203, 1205 n. 4 (App.1982). An encumbrancer, like Smith/Scottsdale, who purchases at a foreclosure sale obviously adds the rights of the fee owner to whatever rights he possessed as a creditor. *Aladdin*, 93 Nev. at 261, 563 P.2d at 85. Smith/Scottsdale's title after purchase of the fee interest at the sale thus included whatever rights Smith held as a secured creditor plus whatever rights were acquired from NSA, the fee owner. A.R.S. § 33–811(B).

In any event, we need not look to the common law doctrine of merger of title to solve the problem. Smith's "credit bid" (A.R.S. § 33–801(3)) at the nonjudicial foreclosure sale extinguished his lien on the property. In return, Smith received a trustee's deed conveying to it all "title, interest and claim of the trustee, the trustor, the beneficiary" and all of their respective successors in interest. A.R.S. § 33–811(B). The conveyance was absolute and clear of all encumbrances having a priority subordinate to the WAMCO/Smith deed of trust. *Id.* Clark's lien continued, of course, and was unaffected by the trustee's sale because it was a senior encumbrance. *Id.* However, whatever its theoretical priority, Clark still had to enforce

the lien by a timely action against the parties it sought to bind by a foreclosure judgment.

■ Thus, the trial court was mistaken when it took judicial notice of and gave prima facie effect to the validity, amount and priority of the Clark lien based upon information taken from the foreclosure judgment. Where there is no preclusive effect to a judgment, Arizona courts may not take "judicial notice" of the *truth* of an evidentiary record in another action tried in the same court. *See, e.g., State v. Lynch,* 115 Ariz. 19, 562 P.2d 1386 (App.1977). *See also* M. UDALL & J. LIVERMORE, ARIZONA PRACTICE: THE LAW OF EVIDENCE § 152, at 333 (2d ed. 1982). It is permissible to take notice that a judgment has been rendered, that a record exists and of the nature of its contents. It is not permissible to bind a party to the evidence in that record except where the party was joined in or privy to the action. Restatement § 34(3).

Therefore, Clark's foreclosure judgment against NSA had neither issue preclusion nor evidentiary effect on Scottsdale. The trial court erred in giving the judgment "prima facie" effect in the subsequent action between Clark and Scottsdale. It was Clark's burden to timely enforce the lien (A.R.S. § 33–998), establishing its validity and amount. We must therefore reverse, and so must also determine whether Clark may still enforce his lien against Scottsdale after remand.

## C. Effect of the Nonjudicial Foreclosure Sale

We first must decide whether title obtained by the junior encumbrancer (Smith) from the original fee owner (NSA) at the nonjudicial foreclosure sale destroyed Clark's rights as a senior lienholder. A trustee's sale is not a judicial proceeding. It is a procedure implemented by prior written agreement between the trustee, trustor and beneficiary. A.R.S. § 33–807. When conducting the sale, a trustee of a deed of trust must comply with stringent pre-sale notice requirements. A.R.S. § 33–808, –809. At completion of the sale, the purchaser receives

> the title, interest and claim of the trustee, the trustor, the beneficiary, their respective successors in interest and of all persons claiming the trust property sold by or through them, *including all claim in the trust property acquired subsequent to the recording of the deed of trust* and prior to delivery of the trustee's deed.

A.R.S. § 33–811(B) (emphasis added).

■ A trustee's deed, therefore, does not affect the rights of a lienholder whose rights accrued prior to recordation of the deed of trust. While Clark recorded his lien claim shortly after WAMCO recorded its deed of trust, Clark's priority dates to the earlier commencement of the work because of the relation-back doctrine expressed in A.R.S. § 33–992. *See Wooldridge Construction Co. v. First National Bank of Arizona,* 130 Ariz. 86, 634 P.2d 13 (App.1981) ("turnkey" preparation work at construction site gave general contractor priority). Whatever Clark's rights were, they were unaffected by the trustee's sale.[4] Thus, unless barred by the statute of limitations, Clark may still enforce his lien by proving its validity, priority and amount by foreclosing it against Scottsdale.

---

**4.** We need not consider the impact of the trustee's apparent failure to give Clark any notice of the trustee's sale. *See* A.R.S. § 33–809(B)(2). *Compare Patton v. First Federal Savings & Loan Association of Phoenix,* 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (trustee's sale held without compliance with statutory notice requirements of notice to the trustor is "void") *with Rosenberg v. Smidt,* 727 P.2d 778, 783–84 (Alaska 1986) (noncompliance with trustee's sale notice rules made sale "voidable"). Nor need we concern ourselves with the effect, if any, of the nonjudicial foreclosure sale on Clark's claim of lien

priority had notice been given in compliance with A.R.S. § 33–809(B)(2). The facts of this case require us to say only that because Smith foreclosed his deed of trust by nonjudicial sale (thus foregoing any opportunity of joining Clark as a party defendant and litigating any question of priority between the construction mortgage and the lien claim) and because Smith also failed to give Clark the notice required by statute, the nonjudicial foreclosure sale had no effect at all on the alleged priority of Clark's lien claim.

## D. Statute of Limitations

The final issue is the correct statute of limitations. The applicable mechanic's lien rule is A.R.S. § 33–998, which states:

*Limitation of action to foreclose lien*

A lien granted under the provisions of this article shall not continue for a longer period than six months after it is recorded, *unless action is brought within such period to enforce the lien.* If a lien claimant is made a party defendant to an action brought by another lien claimant, the filing within such period of six months of an answer or cross-claim asserting the lien shall be deemed the commencement of an action within the meaning of this section.

(Emphasis added.)

This statute is subject to mutually exclusive interpretations. Clark notes Arizona caselaw suggesting that the only indispensable defendant in a mechanic's lien foreclosure action is the owner of the property at the time the complaint is filed. *Ballard v. Lawyers Title of Arizona,* 27 Ariz.App. 168, 170, 552 P.2d 455, 457 (1976). Therefore, according to Clark, once an action is brought against the owner within the six-month period of A.R.S. § 33–998, the mechanic lienor has effectively tolled the statute. The mechanic lienor may then join other claimants to title, take judgment and enforce that judgment against the property and all who were joined in the action in a subsequent sheriff's sale. At the very least, having tolled the statute by commencing action against the owner, the lienor may file subsequent foreclosure proceedings against other claimants who were not named in the original action, even though the subsequent actions are filed after the six-month period prescribed by § 33–998.

The primary authority for Clark's argument is *Kurz v. Pappas,* 107 Fla. 861, 870, 146 So. 100, 104 (1932). *See also Gaines v. Childers,* 38 Or. 200, 203, 63 P. 487, 488–89 (1901) (while encumbrancers are not "bound" by a foreclosure judgment obtained in an action in which they did not participate, the decree is valid and can be used to force other encumbrancers to re-

deem their rights). We have not found any other courts which have followed this approach.

On the other hand, Scottsdale argues that A.R.S. § 33–998 requires a mechanic lienor to sue all parties interested in the property within six months from recordation of the lien claim. The consequences of neither joining other claimants in the foreclosure action brought against the owner nor filing a separate action against such other claimants within the six-month statutory period are twofold. First, the resulting judgment against the owner will have *no* binding effect on the other claimants. Second, six months after the lien claim is recorded, it expires and has no validity at all against those not sued. This is the rule followed by California and Washington courts in construing their states' mechanic lien statutes of limitations. *See Grinnell Fire Protection Systems Co., Inc. v. American Savings & Loan Association,* 183 Cal.App.3d 352, 228 Cal.Rptr. 292 (1986); *Davis v. Bartz, supra* (lien is "lost" as to unnamed encumbrancers). These cases represent the clear majority rule on the subject. *See generally* Annotation, *Time limitation in mechanic's lien statutes as a limitation of the right or only of the remedy,* 139 A.L.R. 903 (1942).

We must choose, then, among two plausible statutory interpretations. It may be said for the minority rule that our statute does not expressly require foreclosure actions to be brought against all claimants but requires only that an "action [be] brought ... to enforce the lien" within six months from its recording. An action against the owner is an action "to enforce the lien." We are also cognizant of the remedial nature of the lien law, *Collins, supra,* and the fact that by requiring that all title claimants be joined or sued separately within six months puts some pragmatic and financial burdens upon the lien claimant.

Nevertheless, we agree with the majority rule in interpreting A.R.S. § 33–998. We hold that the mechanic lienor must sue each party against whom he

seeks to assert his lien within the six-month limitations period of A.R.S. § 33–998. Enforcement is barred as to any party not sued within six months. Sound policy reasons support this result. Suing the interested parties within six months after lien recordation promotes judicial efficiency. *See* A.R.S. § 33–996 (permitting joinder, consolidation and impleading). This case vividly illustrates the vice of any other rule. It is good judicial policy that lien priorities be determined in one promptly filed action, when witnesses and documents are readily available and memories reliable.

Even more importantly, a rule permitting a lien claimant to bring an action within some period of years after recording could create title problems of tremendous magnitude. Under the majority rule, when a mechanic's lien is recorded, its effect on title claims of anyone who is not sued within six months is a nullity. Under the minority rule and *Collins*'s holding on notice, a claim of lien once recorded and foreclosed against one or several claimants would continue to cloud the title forever, unless we could somehow append another statute of limitation to the six-month period provided by § 33–998. Likely statutory candidates would be the one-year statute of limitations for liabilities created by statute (A.R.S. § 12–541(3)) or the general four-year statute of limitations for cases in which "no limitation is otherwise prescribed." A.R.S. § 12–550. However, we do not believe we are empowered to apply a statute of limitations other than that which is specifically prescribed.

Moreover, there are several factors ameliorating any rigors inherent in the majority approach. First, although the foreclosing lienor must name all parties it seeks to bind within the six-month period, the lienor need not immediately delve into complex litigation. He has an additional year from the date the complaint is filed in which to serve any defendants with process. Rule 6(f), Ariz.R.Civ.P., 16 A.R.S. *See also Brown v. Farrell*, 258 Or. 348, 483 P.2d 453 (1971) (foreclosure complaint was timely even though service of the complaint took place after the six-month mechanic lien statute of limitation had expired). This gives a foreclosing lienor additional time to sort out the facts, negotiate, and determine which parties may be unnecessary to adequate relief. If the lienor has filed a lis pendens, all parties who acquire an interest during this period will take subject to any judgment subsequently rendered. *See* part IIIA above; A.R.S. § 12–1191; Restatement § 44 comments a and c.

Second, the foreclosing lienor may use the various relation-back doctrines in the civil procedure rules. *See* Rule 15(c), Ariz. R.Civ.P., 16 A.R.S. *But see United Pacific Insurance Co. v. Cottonwood Properties, Inc.*, 156 Ariz. 149, 750 P.2d 907 (App. 1987) (a mechanic's lien which has expired because no action was filed within the six months' limitation period of A.R.S. § 33–998 cannot be revived by the relation-back doctrine of Rule 15, Ariz.R.Civ.P., 16 A.R.S.).

Third, if the lienor does not know the name of the defendant, the plaintiff may designate the defendant by a fictitious name and amend the pleading accordingly when the true name is discovered. Rule 10(f), Ariz.R.Civ.P., 16 A.R.S. In order to use Rule 10(f), the plaintiff must have "at least some idea of the existence of a defendant, but is without knowledge of the *name*." *Lane v. Elco Industries, Inc.*, 134 Ariz. 361, 366, 656 P.2d 650, 655 (App.1982) (emphasis in original).

Finally, a prudent foreclosing lienor may obtain a title search both at commencement of the lawsuit and at a later date to "bring down" the relevant title information to the point when the lis pendens was filed. This simple procedure will ensure that no new encumbrances appear on the public records "after the initial report but before the lis pendens." M. YARNELL & B. APKER, THE INS AND OUTS OF FORECLOSURES 2–5 (1986). To summarize, any burdens imposed by a strict application of A.R.S. § 33–998 are more illusory than real.

In the present case, Clark apparently sued *only* the original fee title owner within the six-month limitations period of A.R.

S. § 33–998. Therefore, Clark is barred from enforcing his lien against Scottsdale.

### CONCLUSION

Scottsdale was not bound by the Clark foreclosure judgment against NSA. As regards Scottsdale, the foreclosure judgment had no preclusive force or effect. Because the limitation statute now bars Clark from seeking enforcement of its lien against Scottsdale, we vacate the opinion of the court of appeals and remand this case to the trial court for entry of judgment in favor of Scottsdale. On remand, the trial court has discretion to award appropriate trial and appellate attorney's fees to Scottsdale upon a showing that Scottsdale complied with A.R.S. § 12–1103.

GORDON, C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.