NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RAJEEV SINGH, *Plaintiff/Appellant,*

*v.*

RAKESH MALHOTRA, *Defendant/Appellee.*

No. 1 CA-CV 17-0033
FILED 2-22-2018

Appeal from the Superior Court in Maricopa County
No. CV2014-010941
The Honorable Karen A. Mullins, Judge

**REVERSED AND REMANDED**

COUNSEL

Al Arpad, Esq., Phoenix
By Alexander R. Arpad
*Counsel for Plaintiff/Appellant*

Stinson Leonard Street, LLP, Phoenix
By Carrie M. Francis, Lonnie J. Williams, Jr
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Patricia A. Orozco[1] joined.

---

**T H O M P S O N**, Judge:

¶1        In this action, plaintiff/appellant Rajeev Singh (Singh) appeals from the trial court's partial grant of summary judgment, and its second judgment after a bench trial on the remaining claims, in favor of defendant/appellee Rakesh Malholtra (Malhotra). For the reasons set forth below, we reverse and remand for a new trial on all substantive claims, consistent with this decision.

### FACTUAL AND PROCEDURAL HISTORY

¶2        This case concerns two separate matters and incorporates claims for conversion, intentional interference with contract (or contractual relationship), breach of fiduciary duty, and unjust enrichment pertaining to certain alleged assets of Saguaro Medical Associates, P.C. (Saguaro).

¶3        At all relevant times, Saguaro was an Arizona professional corporation with its primary place of business in Maricopa County, Arizona. Malhotra was a shareholder, President and director of Saguaro. Malhotra and another shareholder and director, Satya Atluri, were the only shareholders involved in the administration of the practice. Saguaro initiated Chapter 7 Bankruptcy proceedings on October 11, 2012.[2] The

---

[1]        The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]        Saguaro was under the supervision of the United States Bankruptcy Court for the District of Arizona at the time the underlying lawsuit was filed in the state trial court.

underlying lawsuit was filed by Singh, as successor in interest to Saguaro,[3] against Malhotra, in his capacity as President and a director of Saguaro.

¶4        The first matter pertains to the settlement of a federal lawsuit, brought by Saguaro against Banner Health in February 2008 alleging, among other claims, breaches of contract (the Hospital Action).[4]  Malhotra filed an amended complaint on Saguaro's behalf in the action in late July 2008, at the same time asserting individual claims on his own behalf as an additional plaintiff.  The Hospital Action was settled in February 2010. Malhotra's only remaining claim at the time of the settlement was for interference with contractual relations. In the immediate lawsuit, Singh alleged Malhotra took 100% of the net settlement proceeds from the Hospital Action for himself, and diverted Saguaro funds to pay his personal legal fees.  Singh asserted claims against Malhotra for conversion, breach of fiduciary duty, and unjust enrichment.

¶5        The second matter relates to a contract between Havasu Regional Medical Center (HRMC) and Saguaro (the Lake Havasu Contract). HRMC initiated discussions with Saguaro to become the exclusive contract provider of hospitalist services at HRMC, in Lake Havasu, Arizona.  On March 26, 2008, Malhotra obtained a letter of intent from HRMC, awarding the contract to Saguaro.  Saguaro, through Malhotra as its President, signed the Lake Havasu Contract with HRMC on April 28, 2008.  On or about April 30, 2008, Malhotra assigned the Lake Havasu Contract to Polaris Medical Group, LLC (Polaris), for zero consideration.   At the time, Malhotra retained sole discretion to make decisions on Saguaro's behalf.[5]   The contract was signed by a representative of HRMC on May 10, 2008.

---

[3]      Singh became the successor in interest to Saguaro's claims through an assignment from Saguaro's bankruptcy trustee.

[4]      Saguaro was under contract to provide Banner Health with hospitalist/medical services.  Banner Health terminated its contract with Saguaro on or about March 28, 2008.

[5]      Singh's complaint alleged that Malhotra did not inform any other shareholder or director of Saguaro that he had assigned a contract owned by Saguaro to Polaris.   The parties stipulated that as of the beginning of 2008, Saguaro had six shareholders, including Malhotra.   Four of the shareholders, who were also physicians, notified Malhotra of their resignations on January 18, January 28, January 30 and February 1, of 2008.

¶6        At the time of the assignment, Polaris had only one member, Innovative Solutions Consulting, LLC, which only had one member, Abhay Padgaonkar (Padgaonkar). Padgaonkar was never a member of Saguaro.[6] Saguaro could not fully pay its debts as of late May 2008. Malhotra became a 51% member of Polaris on May 30, 2008. He later assigned his 51% membership in Polaris to Axis Inpatient Management, LLC (Axis), of which he was the sole member.

¶7        Neither Saguaro nor Polaris could service the Lake Havasu Contract at the time Malhotra assigned it to Polaris. Polaris had no employees, and Malhotra contended no physicians were willing to work with Saguaro to fulfill the contract. Following the assignment, Polaris contracted with or hired various physicians, including Malhotra, to provide medical services to satisfy the contract. Saguaro stopped providing medical services around the end of June 2008, even though as of the date of assignment, it still had approximately 20 employees, comprised of 10 doctors and at least 10 staff.

¶8        In this lawsuit, Singh asserted claims against Malhotra for intentional interference with an existing contractual relationship between Saguaro and HRMC, breach of fiduciary duty, and unjust enrichment. Malhotra filed a motion to dismiss all claims relating to both matters,[7] but the trial court ultimately denied that motion. Malhotra subsequently filed a motion for summary judgment on all claims.

¶9        The trial court granted the requested relief as to all claims related to the Hospital Action, and on the intentional interference with

_____

Pursuant to the shareholder agreements these resignations were to be effective 90 days after the notifications—April 17, April 27, April 29, and April 30, of 2008, respectively. Satya Atluri, the other shareholder and director, resigned in May 2008, effective 90 days later in August 2008.

[6]       Singh's complaint asserted that "[i]n order to obtain HRMC's approval of the assignment of the Lake Havasu Contract to Polaris, Padgaonkar, with Malhotra's knowledge and approval, falsely represented that Saguaro and Polaris were identical." It additionally alleged that prior to the assignment of the Lake Havasu Contract, Malhotra and Padgaonkar agreed that Malhotra or his designee would later become a member of Polaris and would share in the benefits of the Lake Havasu Contract.

[7]       One of Malhotra's claims was that the action was barred by the statute of limitations. The trial court concluded otherwise.

contract (or contractual relationship) claim pertaining to the Lake Havasu Contract. Two claims—breach of fiduciary duty and unjust enrichment regarding the Lake Havasu Contract—survived summary judgment and were tried to the bench with an advisory jury. The advisory jury found Malhotra liable for $225,000 as to the claim of his breach of a fiduciary duty. It also found Malhotra had been unjustly enriched, but awarded no additional damages. The trial court entered judgment in favor of Singh.

¶10　　　　　Malhotra filed a post-trial motion challenging the judgment in Singh's favor, and the trial court subsequently vacated its original judgment and reversed itself, ordering judgment for Malhotra on both claims. The trial court also awarded Malhotra his related taxable costs and jury fees. Singh timely appealed both the court's summary judgment rulings and its second judgment after bench trial. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) (2018) and -2101(A) (2018).

## DISCUSSION

### I.　　The Trial Court Erred in Granting Partial Summary Judgment to Malhotra on the Hospital Action Claims, and the Intentional Interference With Contract (or Contractual Relationship) Claim.

¶11　　　　　We review the trial court's summary judgment rulings de novo to determine whether any genuine issues of material fact exist and, if not, whether the trial court erred in applying the law. *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 316, ¶ 8 (App. 1998). In reviewing the evidence, we draw reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered. *See Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 308, ¶ 2 (2003); *Angus Med. Co. v Digital Equip. Corp.*, 173 Ariz. 159, 162 (App. 1992). We will affirm a grant of summary judgment when an appellant has not shown per the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that "there exists evidence of genuine issues for trial," *Molever v. Roush*, 152 Ariz. 367, 370 (App. 1986), and when the trial court was correct for any reason—either argued below or supported by the evidence, *see City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14 (App. 2001).

### A.  Claims Pertaining Only to the Hospital Action

#### 1.  Conversion

¶12          Arizona courts apply the Restatement (Second) of Torts' definition of conversion.  *See Miller v. Hehlen*, 209 Ariz. 462, 472, ¶ 34 (App. 2005).  In Arizona, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  Restatement (Second) of Torts § 222A(1) (1965). Establishing these elements precedes any consideration of the seriousness of the interference and whether the interfering party must pay full value. *Id.* at § 222A(2).

¶13          In his complaint, Singh claimed Malhotra allocated the net settlement proceeds to himself, including for his attorneys' fees and costs in connection with the Hospital Action and his separate Divorce Action.[8] The court ultimately found that Singh's conversion claim lacked factual support, and that Malhotra was entitled to summary judgment.

¶14          The court premised its summary judgment conclusion upon a review of the record which, the court concluded, did not establish Malhotra had allocated all the proceeds to himself, nor addressed how or why the relevant allocations were improper.  We clarify that Singh's argument was as to the net proceeds of the settlement, not all proceeds.

¶15          The only evidence in the record as to the allocation of the settlement proceeds was Malhotra's deposition testimony and answers to interrogatories. The court highlighted that Malhotra testified that of the proceeds,

> $292,000 would be paid to New York Life Insurance Company to repay the loan 'on the life insurance policy that was held by the pension plan for benefit of [Defendant] of the marital community,' that the loan had been used in part to pay legal fees and expert witness fees for the Hospital Action, and that $658,000 was paid to Defendant and his attorney, consisting of $125,000 for economic damages and $533,000 for emotional damages.

---

[8]          Matters regarding the Divorce Action have not been briefed on appeal.

¶16    Malhotra argued this was a proper allocation of the proceeds, and that Singh had no evidence to the contrary. Singh offered the affidavit of his attorney expert, Douglas Tobler, in his response to Malhotra's motion for summary judgment. Tobler opined that "at most ten percent (10%) of the net Hospital Action settlement proceeds could reasonably have been allocated to Dr. Malhotra's sole surviving personal claim against the Hospital."

¶17    On appeal, Singh argues the trial court erred in granting summary judgment on this record because, as a preliminary matter, Malhotra did not carry his initial burden of production to show no genuine issue of material fact, as Malhotra merely asserted that Singh had "no evidence" the allocation of the settlement proceeds was improper. To this point, Singh contends that even assuming the life insurance loan had been used to pay legal fees, the remaining amount of the proceeds, "the total net," "whatever [they] were," was taken by Malhotra for himself. Singh additionally argues the court erred by ignoring his expert opinion evidence.

¶18    Even though Singh had the ultimate burden of proof on the conversion claim, we agree that Malhotra was entitled to summary judgment only if he, as the moving party, satisfied the initial burden of production to show there is no genuine issue of material fact. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 114-15, ¶ 12 (App. 2008). The moving party carries his burden of production by either producing evidence negating an essential element of the nonmoving party's claim or defense, or by showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To be clear however, the movant's burden remained with Malhotra throughout summary judgment. *Nat'l Bank*, 218 Ariz. at 115-116, ¶¶ 16, 17 (citations omitted). Furthermore, "where the evidence or inferences would permit a [reasonable trier of fact] to resolve a material issue in favor of either party, summary judgment is improper." *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195 (App. 1990)

¶19    Here, Malhotra's testimony regarding the allocation of the settlement proceeds does not clearly negate the conversion claim. The mere allocation testimony does not refute that Malhotra's personal exercise over Saguaro's funds seriously interfered with the corporation's right to control those funds. *See Nat'l Bank*, 218 Ariz. at 117, ¶ 21 (indicating that while a party may point to discovery to show there is no evidence to support a claim, "conclusory statements will not suffice"). At oral argument, Malhotra's appellate attorney conceded that nothing in the record shows

that the proceeds were allocated by the settlement agreement. Additionally, the stated allocation does not foreclose the possibility that Malhotra failed to personally pay for a share of the associated litigation costs, thereby leaving the corporation to pay the entire bill. Accordingly, even if Malhotra may be deemed to have met his initial burden, Tobler's affidavit estimating Malhotra's sole remaining personal claim to be worth 10% of the net proceeds, revived the material issue before the court. Tobler's opinion created a genuine issue of clearly material fact as to Malhotra having taken a lopsided amount of the net proceeds to Saguaro's detriment and, implicitly, that Malhotra, in his individual capacity, took monies to which Saguaro was entitled.

¶20        Because we conclude that a genuine issue of material fact existed, we reverse the trial court's grant of summary judgment on the conversion claim.

> 2.        Fiduciary Duty and Unjust Enrichment Pertaining to the Hospital Action

¶21        As to his corporation, a corporate officer is obligated to serve the purpose of his trust with fidelity, and is forbidden from doing any act "by which the assets of the corporation are wrongfully diverted from corporate purposes." *Masters Records, Inc. v. Backman*, 133 Ariz. 494, 499 (1982) (quoting 3A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1102 (rev. perm. ed. 1975) (footnotes omitted)). Malhotra, as president of Saguaro, owed such fiduciary obligations to the corporation.[9] *See, e.g., Kadish v. Phx.-Scotts. Sports Co.*, 11 Ariz. App. 575, 579 (1970).

¶22        "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 541, ¶ 31 (App. 2002). A claim of unjust enrichment requires proof of five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, ¶ 10 (App. 2012) (quotation omitted).

---

[9]        Malhotra improperly claims he cannot owe a fiduciary duty to a corporation where he is its sole shareholder.

¶23　　　　As noted, the trial court also granted summary judgment on Singh's fiduciary duty and unjust enrichment claims related to the Hospital Action. Singh had grounded these two claims on separate bases: Malhotra's alleged payment of personal legal fees with corporate funds, and Malhotra's purported misappropriation of the Hospital Action settlement funds. As to the first, the court found "Plaintiff has conceded that it cannot prove its damages claim in regard to the payment of Malhotra's personal legal expenses." We ultimately find the court nonetheless erred in granting summary judgment as there remained a material dispute on the misappropriation basis. Based upon our reasoning *supra* ¶ 19, we conclude that a material issue existed as to whether Malhotra engaged in wrongful conduct and was unjustly enriched in regard to the net proceeds of the Hospital Action.

¶24　　　　In sum, we reverse the trial court's grant of summary judgment in Malhotra's favor on the conversion, fiduciary duty and unjust enrichment claims pertaining to the Hospital Action settlement proceeds.

### B.　　Intentional Interference With the Lake Havasu Contract, or Contractual Relationship, Between Saguaro and HRMC[10]

¶25　　　　To establish a prima facie claim for intentional interference with a contractual relationship, "a plaintiff must show 'the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.'" *Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 10 (2005); *Miller v. Hehlen*, 209 Ariz. at 471, ¶ 32 (quoting *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 427 (App. 1995)). "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement (Second) of Torts § 766 (1979).

---

[10]　　Contrary to Malhotra's position on appeal and the trial court's conclusion in footnote one of its summary judgment ruling minute entry, we do not find that Singh did not address the interference argument in responding to the motion for summary judgment and thus waived it.

¶26 In granting summary judgment to Malhotra as a matter of law, the trial court found that "Defendant, as President of Saguaro, caused a contract between Saguaro and Havasu Regional Medical Center, LLC, to be assigned from Saguaro to Polaris." The court then concluded Malhotra thus, "did not, as a matter of law, cause a third party not to perform a contract with another nor did he cause a third party not to enter into or continue a business relation with another." This conclusion was based upon the principle that "[a] party cannot be held liable in tort for intentional interference with its own contract." *Campbell v. Westdahl*, 148 Ariz. 432, 438 (App. 1985). The court appears to have conflated its consideration of Malhotra and Saguaro as a single entity. In doing so, the court erred given the facts of the case.

¶27 It is axiomatic that, generally, individual officers and directors of a corporation are legally separate and distinct entities from the corporation itself. While the two may merge, such as when an officer or director acts on behalf of his corporation, whether Malhotra was acting for the corporation, as opposed to himself personally, was the very issue underlying the court's reason for denying summary judgment, in the same minute entry, on the fiduciary duty and unjust enrichment claims pertaining to the Lake Havasu Contract. *See S. Union Co. v. SW Gas Corp.*, 165 F. Supp. 2d 1010, 1038 (D. Ariz. 2001) ("[W]hen a defendant is both an agent of a party to the contract and the person accused of tortious interference, a plaintiff may assert the cause of action by additionally proving the defendant acted so contrary to the principal's interests that his actions could only have been motivated by personal interests.") (Alteration in original) (quotation and citations omitted). Further, as suggested in our Lake Havasu Contract fiduciary duty review, beginning *infra* ¶ 33, the evidence before the court at trial, may likely indicate that in transferring the contract to Polaris without consideration having been paid for its acquisition by Polaris, Malhotra cannot be deemed to have acted on behalf of Saguaro.

¶28 Accordingly, we reverse and remand for a new trial on this claim.

## II. The Trial Court Erred in Re-entering Judgment on the Remaining Claims That Were Tried, and Its Re-entered Judgment Was Not Supported by Substantial Evidence.

¶29 In an equitable action, a trial court is not bound by an advisory jury's findings, and its findings supersede the jury's determinations as the basis for its judgment. *Wooldridge Const. Co. v. First*

*Nat'l Bank of Ariz.*, 130 Ariz. 86, 88 (App. 1981) (citations omitted). Additionally, a trial court is not presumed to have adopted an advisory jury's findings merely by not making separate findings, where no findings were requested. *Estate of Olivas*, 132 Ariz. 61, 63 (App. 1982).

**¶30** The court rendered two separate judgments in this matter pertaining to Singh's Lake Havasu Contract fiduciary duty and unjust enrichment claims, which were tried with an advisory jury. Its original judgment, regarding both claims, was rendered consistent with the advisory jury's verdict in favor of Singh. That judgment was rendered without accompanying findings and conclusions of law.[11] Malhotra then submitted a post-trial motion, which he proffered as a "Renewed Motion for Judgment as a Matter of Law, to Vacate or Amend the Judgment, or Alternatively for a New Trial." He made this motion pursuant to Rules 50(b), 52(b), and 59(a)(8), (b), (c)(4) and (1). The court ultimately ordered a different judgment, granting Malhotra's motion.

**¶31** The court's second judgment purported to be a review of the evidence's sufficiency. That judgment includes findings and reweighs the evidence which had been submitted at trial and vacates the court's prior judgment in Singh's favor. The court did not specify the rule under which it had acted, but we conclude, to the extent the court ordered judgment in accord with Malhotra's motion, it intended to do so pursuant to Rule 52(b).[12]

**¶32** We note that most of the trial court's findings implicate mixed questions of law and fact, or are legal conclusions. We are not restricted to favorably construe the evidence to support such a judgment, and may draw our own legal conclusions from the facts found or inferred in the trial

---

[11]     Neither party had requested findings.

[12]     Rule 52(b) permits a court, upon motion, to amend findings requested under Rule 52(a) or make additional findings, and to amend judgment accordingly. Rule 50(b) allows judgment as a matter of law, which foreclosed the court from reweighing evidence and making findings, as it did here. *See Mcbride v. Kieckhefer Assocs., Inc.*, 228 Ariz. 262, 265, ¶ 11 (App. 2011). Rule 59 authorizes modifying, amending, or vacating a judgment upon grant of a new trial motion. Here, prior to vacating the first judgment, the court stated that "a new trial is unnecessary as the Court has already heard all of the evidence and the jury verdict was merely advisory."

court's judgment, and are not bound by its findings. *Estate of Musgrove*, 144 Ariz. 168, 170 (App. 1985). We review a judgment following a bench trial to determine whether it is supported by substantial evidence[13], *Wooldridge*, 130 Ariz. at 88 (citing *Mullins v. Horne*, 120 Ariz. 587, 591 (App. 1978)), and review a trial court's decision to vacate its own judgment and re-enter judgment for an abuse of discretion, *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455-56 (1982), *supp. op.*

## A.     Fiduciary Duty Pertaining to the Lake Havasu Contract

**¶33**         As previously noted, Malhotra, as Saguaro's director, was under a fiduciary duty to serve the corporation with fidelity, and to avoid engaging in any act "by which the assets of the corporation are wrongfully diverted from corporate purposes." *Masters Records, Inc.,* 133 Ariz. at 499.

**¶34**         Such fiduciary duties generally exist in tandem with the business judgment rule, which presumes a director has acted in good faith in making a business decision. *See United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 140, ¶ 31 (App. 2006) (citation omitted). That rule "precludes judicial inquiry into actions taken by a director in good faith and in exercise of honest judgment in the legitimate and lawful furtherance of a corporate purpose." *Shoen v. Shoen*, 167 Ariz. 58, 65 (App. 1990). A plaintiff may rebut the presumption only by showing the absence of good faith by clear and

---

[13]         Quoting *In re CVR 1997 Irrevocable Trust*, 202 Ariz. 174, 177 (App. 2002), Malhotra argues that we must "presume that the trial court found every fact necessary to support its ruling and affirm if any reasonable construction of the evidence supports the decision." He argues the applicability of this premise to this case on the basis that the court made no specific findings in rendering judgment. Appearing to draw no meaningful distinction between the court's first judgment and its second judgment, Malhotra further argues that because "the trial court made no findings of fact or conclusions of law and . . . the parties requested none, all inferences supported by the evidence must be drawn in favor of Malhotra and the two judgments." However, as already noted, the court's original judgment after trial was in Singh's favor. That judgment, with no associated findings or conclusions, and to which all necessary factual findings would therefore be presumed, is not the judgment directly appealed. The court's second judgment included findings and conclusions. We consider these findings and conclusions, *see Wooldridge*, 130 Ariz. at 88, and will not presume the court made findings it did not articulate.

convincing evidence. *See* A.R.S. § 10-830(D) (2004) (historical and statutory notes).

¶35 The rule, however, implicitly recognizes that inherent in a director's fiduciary obligations is a prohibition against self-dealing, or other actions indicating the absence of good faith.[14] Moreover, this court held in *Shoen* that

> [o]nce there is a prima facie showing that a director is personally interested in a corporate transaction, the business judgment rule does not apply, and the burden shifts to the director to show that the decision with respect to a particular transaction is fair and serves the best interests of the corporation and the shareholders.

*Shoen*, 167 Ariz. at 65.[15]

¶36 Singh argues that the evidence shows Malhotra was acting for his own interest and Polaris's interest, not Saguaro's corporate interests, when he transferred the Lake Havasu Contract to Polaris without *any* compensation to Saguaro. Consequently, Singh argues the business judgment rule did not apply and Malhotra could not benefit from its presumption of good faith. Malhotra asserts that Singh makes this "exception" to the business judgment rule argument for the first time on appeal. Our review of the record shows Singh first raised this argument in

---

[14] Black's Law Dictionary defines good faith as "[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary 713 (8th ed. 2004).

[15] *See also Kadish*, 11 Ariz. App. at 578 (stating "[w]here the acts of an officer or director smack of self-dealing . . . the officer or director has the burden of proving the fairness of the transaction to the corporation to which they owe a fiduciary duty"); *F.D.I.C. v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998) (under Arizona law, when the business judgment rule applies to conduct of a corporation's director, a showing of gross negligence is necessary to strip the director of the business judgment rule's protection; however, when threshold requirements of the rule are not met, showing of simple negligence can be sufficient to impose liability on director).

response to Malhotra's motion to dismiss in the trial court, although without reference to *Shoen*.

¶37 We additionally consider the possibility that Singh may have waived the argument by failing to request a burden shifting jury instruction. In *AMERCO v. Shoen*, this court refused to address an argument premised on *Shoen v. Shoen*, as to "whether the burden of proof should have been shifted . . . because plaintiffs failed to preserve [the] issue for appeal []" by not requesting a final instruction in that regard. 184 Ariz. 150, 160-61 (App. 1995). *AMERCO* is inapplicable to this case as it was considered in the context of a jury trial. *See Fuentes v. Fuentes*, 209 Ariz. 51, 57, ¶¶ 31-32 (App. 2004) (unlike a jury, the trial judge in a bench trial is presumed to know the law and to have applied it in making her decision).

¶38 As to the legal standing of the *Shoen* decision, both parties alert this court to the possibility that the "exception" may have been narrowed or limited by A.R.S. § 10-830 *et seq.* which codified the duties of corporate directors and officers in 1996, subsequent to the issuance of *Shoen*. Singh additionally points out that the extent or possibility of such narrowing or limiting "has not been determined by Arizona courts." Nothing in the relevant statute shows an intent to eviscerate, limit, or even address the reasoning and holding of *Shoen*. *See* A.R.S. § 10-830. *Shoen* remains good law, and as such the trial court is presumed to know it and apply it in rendering a decision.

¶39 Here, the court's final judgment appears to allow Malhotra to benefit from the business judgment rule without considering *Shoen*, albeit finding that "Plaintiff cast doubt as to whether Defendant Malhotra acted in good faith or in the exercise of honest judgment in the legitimate and lawful furtherance of a corporate purpose." The court's judgment does not address, perhaps because the court failed to assess, whether Singh's evidence that casts "doubt" would amount to a prima facie showing of personal interest, thereby transferring the burden to Malhotra to prove he acted fairly and to serve Saguaro's best interests. *See Shoen*, 167 Ariz. at 65. Accordingly, we find the court erred in granting judgment, without undertaking all legal considerations attendant to this determination.

¶40 The court's judgment is additionally wanting in applying the benefit of the business judgment rule. In vacating and reentering judgment, the court found that "Plaintiff has not, by clear and convincing evidence, rebutted the presumption that Defendant acted in accordance with his fiduciary duties."

¶41         Appearing to find the issue of whether Malhotra had selfish or personal motives overriding his proffered business rationalization dispositive, the court concluded Singh had not offered sufficient evidence to overcome the presumption.   The court's sufficiency finding is partly based upon its reasoning that "affirmative evidence is needed to establish a personal motive in order to meet the clear and convincing standard and such evidence was not offered."   As a result, the court concluded, Malhotra's transfer of the Lake Havasu Contract from Saguaro to Polaris, without consideration, was protected by the business judgment rule.

¶42         First, it is unclear what the court's affirmative evidence requirement means in the context of this case.  The court made the subject "affirmative evidence" statement following a sentence concluding that Singh's "Item no. 5" which he highlights in his responsive brief to Malhotra's post-trial motion, "is not sufficient to establish that Defendant Malhotra's motivation was personal rather than corporate."  Item no. 5 was part of a section in Singh's brief offering evidence presented at trial, "contradict[ing] Malhotra's self-serving post-hoc rationalization that he acted honestly and in good faith with the genuine goal of helping Saguaro . . . ."  The item, standing alone, provides: "Malhotra's testimony . . . that he personally had 'no place else to go' but to work the Havasu contract— suggesting that his motivation was personal rather than corporate."

¶43         It is unclear why the court did not consider this statement by Malhotra to be "affirmative evidence;" the court did not highlight what in the record negated it.   To be clear, affirmative evidence is defined as evidence "[t]hat supports the existence of certain facts." Black's Law Dictionary (7th ed. 1999).  The use of the word "support" in the definition suggests that while the evidence must be undisputed (not negated or incredible), it need not be conclusive to be deemed affirmative.

¶44         Moreover, "[a]n objective determination of the state of mind possessed by an actor in connection with [his] conduct is usually accomplished by examining all the circumstances surrounding the conduct." *Estate of Gordon*, 207 Ariz. 401, 406, ¶ 24 (App. 2004).  "[A] court should not diminish the probative value of evidence only because it is circumstantial." *State v. New Phoenix Auto Auction, Ltd.*, 185 Ariz. 302, 306 (App. 1996).  When reviewed in its entirety, the section containing "Item no. 5" highlights Malhotra's statements, actions, and inactions, which Singh argued showed Malhotra's absence of good faith, and his motivation to act for personal reasons rather than with the intent to further a corporate purpose.

¶45 The section consisted of the following items:

1. Malhotra's remarkably honest 9/24/15 deposition testimony (acknowledged at trial) that he didn't change the name and structure of Saguaro in order to fulfill the Havasu contract because "yeah, because I didn't want to." See Ex A hereto.

2. Malhotra's 5/30/08 contemporaneous testimony in his divorce case (acknowledged at trial—Ex. 1 to Motion for New Trial, p. 25:18-23) that his motivation for using a different entity to fulfill the Havasu contract was "I am shedding all the baggage and starting life afresh"—rather than that Saguaro couldn't handle the contract so he saved the company from the responsibility.

3. Malhotra's testimony in various disputes with his enemies (discussed at trial—Ex. 1 to Motion for New Trial, p. 26, 31-34 and missing pages) concealing the fact that a contract between Saguaro and Havasu (rather than between Polaris and Havasu) ever existed.

4. Malhotra's trial testimony (beginning at Ex. 1 to the Motion for New Trial, p. 26 and continuing onto pages not provided) confirming that he had no problem providing seriously misleading information under oath, which may have affected the jury's and Court's judgment of his credibility.

5. Malhotra's testimony (Ex. 1 Motion for New Trial, p. 104:10-11) that he personally had 'no place else to go' but to work the Havasu contract—suggesting that his motivation was personal rather than corporate.

¶46 The statements by Malhotra indicating his impetus for the transfer to Polaris should have been considered within the totality of the circumstances. Instead, the court considered certain statements, such as those expressed in item nos. 1 and 2, as merely examples of Malhotra's "irascible nature," having "no real evidentiary value." In addition to appearing to disregard or diminish evidence it deemed to not be "affirmative evidence," the court's final judgment improperly considered the evidence Singh highlighted in a piecemeal, item-by-item fashion. To be sure, the circumstances involved a transfer of all value from the Lake Havasu Contract to Polaris, and (at least partly) back to Malhotra—given

his 51% ownership interest in Polaris—through Axis of which Malhotra was sole owner. The transaction took place within the context of Malhotra's expressed belief, which he repeats on appeal, that he could breach no fiduciary obligation to Saguaro, as he was the corporation's sole shareholder.

¶47        Beyond the court's tenuous lack of "affirmative evidence" rationale underlying its evidentiary assessment, we note the court's key findings in its second (or final) judgment presents a stark reversal of its summary judgment findings. We consider this to put the court's final judgment in perspective.

¶48        At summary judgment, the court found:

> Although there is a presumption that an officer has acted in conformity with his duties, that presumption may be rebutted by clear and convincing evidence. *See A.R.S. § 10-842(A), (D)*. Here, however, there is no evidence that any compensation was paid to Saguaro for the assignment of the Havasu Regional Medical Center [contract] to Polaris, in which Defendant had an interest, and there is no evidence that any corporate purpose was served in assigning that contract without compensation. Moreover, Plaintiff has offered evidence that under the assigned contract, Polaris provided services to Havasu Regional Medical Center and obtained significant compensation for those services.

¶49        After trial, in reviewing its initial judgment, the court acknowledged it had previously considered "Malhotra's failure to obtain some consideration from the assignment of the contract from Saguaro to Polaris to be significant," toward indicating Malhotra had not acted in furtherance of a corporate purpose. However, the court then went on to minimize the lack of efficacy in Malhotra not having obtained any consideration for Saguaro. In this regard, the court found that "Malhotra's testimony that he could not find physicians to work under the Saguaro name given the Banner Health litigation supports his argument that the contract had no value." Malhotra had argued that because Saguaro, as it was, "could not provide the professional services required under that contract," the contract had no value to Saguaro and therefore "was not an

asset" that could be "'wrongly diverted' by being transferred to Polaris," and Saguaro "was not and could not have been damaged by the transfer."[16]

**¶50** While the evidence affirms that Saguaro, as it existed at the time of contracting,[17] could not have provided services, the essential premise underlying the "no value" argument is faulty. As Singh pointed out within his responsive brief to Malhotra's post-trial motion and briefs on appeal, the Lake Havasu Contract was not rendered valueless, and therefore could not generate funds with which debt might be paid, merely because the contract was not assignable after it was made, or because Saguaro might have been unable to service it. "An asset, corporate or otherwise, is generally defined as 'property of any kind, whether real or personal, tangible or intangible, legal or equitable, which can be made available for the payment of debts.'" *Master Records, Inc.*, 133 Ariz. at 499 (quoting *Harris v. United States*, 431 F. Supp. 1173, 1178 (E.D. Va. 1977)). Singh argued Malhotra could have contracted to pay Saguaro a percentage of the profits it realized on the Lake Havasu Contract. In this regard, Singh's counsel had the following exchange with Malhotra at trial:

> Q.    (BY MS. HUMPREY:) So your position is people didn't want to work with Saguaro as of April 30, 2008, correct?
>
> A.    In fact, even prior to that, none of the physicians that I approached within or outside of Saguaro wanted to work with Saguaro or under Saguaro.
>
> . . .

---

[16]    The court made no finding or reference regarding Malhotra's argument that its decision to transfer the contract to Polaris was in Saguaro's best interests because Polaris assumed Saguaro's potential liability under the contract, given that Saguaro could not have serviced the contract. The court also found Malhotra's testimony that HRMC expressed reservations about entering into a service contract with Saguaro could not be corroborated.

[17]    Singh argued Malhotra could have reconstructed Saguaro to enable it to service the contract. Malhotra's retort was that putting "lipstick on a pig ain't going to make it fly."

Q.      And your position is also that if you had signed a contract between Polaris and Saguaro so Saguaro would get paid a percentage of the profits, that those doctors would have refused to work for Polaris on the ground that this contract existed?[18]

A.      I think that—that's the question that you haven't asked before.  So I don't quite know how to answer that.

Q.      Have you not thought about that?

A.      Thought about what?

Q.      Okay. Are any of the doctors who worked for Polaris going to come in and testify and say that they would never have worked for Polaris if they had known it had a contract to pay a percentage of profits to Saguaro?

A.      They had no business of knowing what contract Polaris had with anything or anybody, so—

. . .

Q.      It was none of their business if Polaris had a contract with Saguaro, was it?

A.      No.

¶51      Given these considerations, we cannot conclude the court properly evaluated the evidence before it, or that its decision was supported by substantial evidence.  For this reason, and the trial court's failure to

---

18      While Malhotra testified that the other member of Polaris, Mr. Padgaonkar, wanted nothing to do with Saguaro, he did not state that Padgaonkar expressly objected to paying a portion of the Lake Havasu Contract's profits to Saguaro, as they were earned.  Additionally, Singh's counsel questioned Malhotra, about whether he could have contracted between Access—which he owned 100 percent of and which held a 51 percent ownership interest in Polaris—and Saguaro where Access pays Saguaro a percent of the profits it received from the Havasu contract.  To this inquiry, Malhotra responded: "Based on what logic? Based on what percent? I—this is—I don't know."

properly apply *Shoen*, we reverse the trial court's fiduciary duty ruling and remand for a new trial on the claim.

### B.       Unjust Enrichment Pertaining to the Lake Havasu Contract

**¶52**       Within its final judgment favoring Malhotra, the court found that "Plaintiff has failed to establish the fourth element of Count Two, Unjust Enrichment, *i.e.* a lack of justification for the enrichment and the impoverishment." This finding appears to be based upon many of the same facts and conclusions underlying the court's fiduciary duty ruling, and its finding that Malhotra's conduct was not improper based upon the business judgment rule.[19] Because we consequently are unable to deduce the extent to which the court's legal error and seemingly incomplete evidentiary evaluation imbued its unjust enrichment finding, this finding is likewise deemed impaired, and we additionally reverse and remand for a new trial on this claim.

### III.    Issues Relating to Exclusion of Evidence Are Moot.

**¶53**       On appeal, Singh argues the trial court erroneously excluded certain evidence. First, Singh contends the trial court improperly excluded Singh's supplementary value (or damages) expert report based upon an erroneous interpretation of Arizona Rule of Civil Procedure (Rule) 26.1. Second, Singh's argues that the court's "[e]limination of the Hospital Action claim[s] excluded evidence on the dispositive issue from the trial on the Lake Havasu Contract claim [(i.e., Malhotra's selfish motive)]." Because we conclude the trial court's substantive rulings in both the Hospital Action and the Lake Havasu Contract Action cannot be sustained on appeal, and accordingly reverse and remand the case for a new trial of all claims, the issues asserted as to the exclusion of evidence are moot.

### IV.    Award of Costs

**¶54**       On appeal, Malhotra requests an award of his reasonable expenses and costs pursuant to A.R.S. § 12-341 (2018) and Arizona Rules of Civil Appellate Procedure 21. Singh did not request an award of costs or fees. Because we reverse and remand the claims, there is not yet a successful party, as required by A.R.S. § 12-341, allowing for an award of costs. *Cf. Henry v. Cook*, 189 Ariz. 42 (App. 1996) (reversed upon certain claims on appeal, but not remanded, with a determined successful party); *see Drozda v. McComas*, 181 Ariz. 82, 85 (App. 1994) (explaining that the

---

19       The parties agree on this much.

"successful party" is the party who wins the lawsuit); *see also McEvoy v. Aerotek, Inc.*, 201 Ariz. 300, ¶ 9 (App. 2001) (citation omitted) (indicating that an award of costs is not mandatory until a party has been determined to be successful).  We accordingly defer as to the awarding of costs until there is a successful party in this matter.  At that time, the trial court may consider the award of costs incurred on appeal.

## CONCLUSION

**¶55**        For the reasons stated above, we reverse the trial court's grant of partial summary judgment and its final judgment on the two claims that were tried.  We remand for a new trial, consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA